**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW JERSEY

**Order Filed on September 23, 2021**

**by Clerk**

**U.S. Bankruptcy Court**
**District of New Jersey**

_____

               :

In re:                 :

               :     CHAPTER 7

Khashayar Vosough,

        Debtor.     :

               :     CASE NO.: 14-28095 (RG)

               :

_____:

               :

Charles A. Stanziale, Jr.,

               :     ADV. NO.: 15-01068 (RG)

        Plaintiff,    :

v.              :

               :

Valley National Bank, et al.,    :

        Defendants.   :

_____:

# **O P I N I O N**

**APPEARANCES**

JOSEPH E. HUNSADER, ESQ.
Tax Division
United States Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC  20044

-and-

GREGORY L. VAN DYCK, ESQ.
Deputy Attorney General of New Jersey
Division of Law
Richard J. Hughes Justice Complex
25 Market Street - P.O. Box 119
Trenton, NJ  08625-0119

*Attorney for the New Jersey Division of
Taxation*

EAMONN O'HAGAN, ESQ.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

*Attorneys for United States of America,
Internal Revenue Service*

DANIEL R. SEAMAN, ESQ.
McCarter & English, LLP
100 Mulberry St.
Newark, NJ 07102

*Attorneys for Chapter 7 Trustee, Charles A.
Stanziale, Jr.*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

<u>**JURISDICTION AND VENUE**</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, and amended September 18, 2012.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K) involving the administration of an estate and the determination of the extent and priority of liens.  Venue is proper under 28 U.S.C. § 1408.  Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law.

<u>**PROCEDURAL AND FACTUAL BACKGROUND**</u>

*THE DEBTOR'S BANKRUPTCY CASE*

On September 2, 2014, Khashayar Vosough (the "**Debtor**") filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  Main Case ECF No. 1.[1]  The Court entered an Order converting the Chapter 11 case to a Chapter 7 case on October 29, 2014.  Main Case ECF No. 29.

On November 4, 2014, the Internal Revenue Service (the "**IRS**") filed an amended secured claim in the amount of $949,518.20.  Of that amount, the only portion at issue is $935,659.36, which represents the 2012 federal income tax liability.  *Claims Register*, Proof of Claim No. 2-2.[2]  Thereafter, the New Jersey Division of Taxation (the "**Division**") filed an amended secured claim

---

[1] All references to the docket herein are to the adversary proceeding before this Court except when specifically referencing the main Chapter 7 case, which will be referred to as "**Main Case ECF No. _**"

[2] The IRS filed its original Proof of Claim in this case on September 26, 2014, in the amount of $961,480.31 reflecting Debtor's 2012 federal tax liabilities.  *Claims Register*, Proof of Claim No. 2-1.  The record also demonstrates that the IRS filed a Proof of Claim in this case on May 5, 2021, in the amount $854,255.65 reflecting an administrative tax claim.  *Claims Register*, Proof of Claim No. 21-1.  However, the only relevant liens at issue before the Court are the ones related to the Debtor's 2012 and 2013 tax liabilities.

in the total amount of $195,278.01 for the Debtor's 2012 total gross income tax (the "**TGI**") and $406.64 for the Debtor's 2013 Gross Income Tax - Employer Withholding ("**GIT**"). *Claims Register*, Proof of Claim Nos. 13-2 and 14-2.[3]  The claims filed by the IRS and Division demonstrate they hold liens (collectively, the "**Tax Liens**") on the Debtor's property, specifically in relation to the real property located in Franklin Lakes, New Jersey (the "**Real Property**").

## *THE ADVERSARY PROCEEDING*

On January 26, 2015, the Debtor filed the instant adversary proceeding (the "**Adversary Proceeding**") against Valley National Bank (and other banks) seeking reinstatement of the automatic stay regarding several real properties, including the Real Property, to allow Charles A. Stanziale, the Chapter 7 Trustee (the "**Trustee**"), to market and sell the properties.  ECF No. 1. On November 22, 2015, the Court entered a *Stipulation and Order of Substitution of Plaintiff* wherein the Trustee substituted in as the Plaintiff in this Adversary Proceeding.  ECF No. 40.  The dispute before the Court relates to the priority of the tax liens because both the IRS and the Division assert superior rights to the proceeds from the sale of the Real Property.

---

[3] The Division filed a Proof of Claim on February 17, 2015, in the total amount of $211,210.07 reflecting the TGI. *Claims Register*, Proof of Claim No. 13-1.  On the same day, the Division then filed a Proof of Claim in the total amount of $421.48 reflecting the GIT. *Claims Register*, Proof of Claim No. 14-1.

The Division then filed amended Proof of Claims for the TGI and GIT liens on June 15, 2017, reflecting updated interest amounts and total amounts due for both liens. *Claims Register*, Proof of Claim Nos. 13-2 and 14-2.  The Division's amended secured claim for the TGI showed a total amount owed of $195,278.01. *Claims Register*, Proof of Claim No. 13-2.  In its pleadings, the Division seeks a determination that $165,024.35 of the $195,278.01 has priority over the IRS's lien.  ECF No. 56 at 12.  The Division derives this $165,024.35 portion from the total amount of the amended secured claim, $195,278.01, minus $30,253.66 in penalties and interest. *Claims Register*, Proof of Claim No. 13-2.  The Division's amended secured claim for the GIT shows a total amount owed of $406.64. *Claims Register*, Proof of Claim No. 14-2.

*THE TAX LIENS*

**The IRS's Tax Lien**

On April 15, 2013, the Debtor filed his 2012 federal tax return. The federal tax return reflects a balance due of $773,344.00. ECF No. 45-5 at 3.[4] The Debtor failed to submit any payment with his 2012 federal tax return and $773,344.00 remained outstanding. On June 3, 2013, the IRS assessed the 2012 federal tax liability, including applicable penalties and interest, and sent the Debtor a *Statutory Notice of Balance Due*. *Id*.; ECF No. 45-8 at 3.

**The Division's Tax Liens**

**The 2012 TGI**

On or before April 15, 2013, the Debtor filed his TGI return for the tax period of January 1, 2012, to December 31, 2012. As shown on the return, the Debtor owed $225,229.00 at the time he filed the return. The Debtor only paid $50,000.00 and was credited $326.00 of the $225,229.00 when he filed the return. ECF No. 45-10 at 63. The Debtor still owed $180,714.20,[5] which included a penalty and interest amount of $5,811.30. *Id*. The Division electronically processed the TGI return on April 19, 2013. *Id*. at 12, 63. On the same day, the Division's computer system automatically classified the $180,714.20 in the review category as "MAX MAX" because of the amount of the unpaid tax liability. *Id*. at 14-17.

Timothy Cole ("**Mr. Cole**") is an investigator for the Division. *Id*. at 3-4. He stated the electronic classification of "MAX MAX" is automatically generated by the electronic system when the amount of the tax due is above a threshold amount. *Id*. at 14-17. Because of the "MAX MAX"

---

[4] The tax liability due on April 15, 2013, was $874,524.00 minus both $1,180.00 for withholding and $100,000 from an estimated tax declaration. The deduction was either a result of a payment or credit. ECF No. 45-8 at 2.

[5] This number represents the total amount due for the TGI before the Division filed its original Proof Claim on February 17, 2015, with a new total amount of $211,210.07, reflecting an increase in penalties and interest. *Claims Register*, Proof of Claim No. 13-1. An amended secured claim was thereafter filed on June 15, 2017, reflecting the updated TGI total amount of $195,278.01. *Claims Register*, Proof of Claim No. 13-2.

classification, the Division's electronic computer review system first checks to confirm the amount due. *Id*. at 15. If the computer determines that the amount is correct, then it automatically generates a bill. *Id*. If the computer determines the debt is incorrect, it then requires human intervention. *Id*. In the present case, the computer determined that the amount due for the Debtor's TGI return was correct and automatically generated a bill. *Id*. However, a human review of the bill still took place ". . . due to the large amount of tax and interest due." *Id*. at 21, 63.

On July 9, 2013, the Division conducted a human review of the bill automatically generated for the Debtor's TGI. *Id*. at 15-16, 63. On July 10, 2013, the Division confirmed the outstanding amount due of $180,714.20 and sent an invoice to the Debtor. *Id*. at 63. The Debtor failed to pay the TGI bill. As a result, the Division referred the unpaid TGI to a third-party debt collector, Pioneer Credit Recovery ("**Pioneer**"), for collection. *Id*.

On April 28, 2014, Pioneer sent the Debtor a *Notice and Demand for Payment Of Tax* regarding the 2012 TGI. *Id*. at 74. Again, the Debtor failed to pay the TGI balance of $180,714.20 due on the TGI. On June 26, 2014, Pioneer—on behalf of the Division—docketed a Certificate of Debt ("**COD**") with the Superior Court of New Jersey. *Id*. at 63-64. Pioneer then returned the Debtor's tax file back to the Division on July 28, 2014. *Id*. at 63. Pioneer never collected the $180,714.20 due for the TGI. *Id*.

### The 2013 GIT

On April 25, 2013, the Debtor timely electronically filed his company's GIT return for the first quarter of 2013. The GIT is a trust fund tax deducted and withheld from employees. N.J.S.A. § 54A:7-5 (taxes deducted and withheld from employees constitute trust funds). The Debtor owed $3,120.72 when he filed the GIT return. *Id*. at 64-65. Even though $3,120.72 was the amount withheld from employees, the Debtor's installment payments made from January 30, 2013,

4

through March 27, 2013, only totaled $2,746.09.  *Id*.  The payments for the 2013 GIT were deficient $374.63.  *Id*.  The Division processed the GIT return on May 1, 2013, at which time $374.63 remained outstanding for the 2013 GIT.  *Id*.  The Division sent a deficiency bill to the Debtor on May 14, 2013, for the remaining balance.  *Id*.  The Division made no further collection efforts regarding the outstanding 2013 first quarter GIT.  *Id*. at 26.

### The Division's Tax Liens' Penalty and Interest

The Division's amended secured claims for its liens include penalty and interest amounts for the TGI lien and interest for the GIT lien.  *Claims Register*, Proof of Claim Nos. 13-2 and 14-2.  Specifically, the Division's TGI lien includes a penalty of $8,745.15 and interest of $21,508.51, for a total penalty and interest amount of $30,253.66.  *Claims Register*, Proof of Claim No. 13-2.  The Division's GIT lien has no penalty, but includes interest of $32.01.  *Claims Register*, Proof of Claim No. 14-2.

### *THE SUMMARY JUDGMENT MOTION*

On June 11, 2018, the IRS filed a motion for summary judgment in the Adversary Proceeding (the "**Summary Judgment Motion**").  ECF No. 45-1.  The IRS seeks a determination that its tax lien has priority over the Division's liens because the IRS alleges it perfected its lien first.  ECF No. 45 at 2.  The IRS asserts that its federal tax lien has priority over the Division's TGI lien because the Division had not satisfied the three choateness requirements expressly set forth by the Supreme Court in *United States v. City of New Britain*, 347 U.S. 81 (1954).  ECF No. 45-1 at 14.  In addition, the IRS argues that the Division's TGI lien did not satisfy the fourth choateness requirement that the lien be "summarily enforceable," as stated by the Third Circuit in *Monica Fuel, Inc. v. I.R.S.*, 56 F.3d 508, 512 (3d Cir. 1995).  *Id*. at 15, 19.

Specifically, the IRS asserts that the Division failed to properly perfect the TGI lien before June 3, 2013, which is the date the IRS perfected its lien. *Id*. at 15-16. The IRS contends that the Division: (1) failed to establish its TGI lien until March 20, 2014, which was when the Division determined the Debtor's penalty liability in the amount of $8,745.15; (2) failed to provide notice and demand to the Debtor of the TGI liability until after June 3, 2013, which was after the IRS perfected its lien; and (3) could not summarily enforce its TGI lien until June 26, 2014, which was the date that the Division filed its COD. *Id*. at 14-21.

The IRS also asserts that the Court should consider a fifth requirement in determining the priority of the liens. *Id*. at 16-18. The IRS argues that notice and demand is an additional requirement that both the United States Supreme Court and the Third Circuit use in determining priority of lien perfection. *Id*.

The IRS also contends that the Division failed to perfect the 2013 GIT lien as of June 3, 2013, and that it is still not perfected to this day. *Id*. at 22. The IRS recognizes that the Division sent the Debtor an invoice on May 14, 2013. *Id*. The IRS asserts, however, that the Division failed to: (1) send the Debtor a formal notice and demand for the tax liability; and (2) file a COD relating to the 2013 GIT tax lien. *Id*. As a result, the IRS contends that the 2013 GIT lien never became summarily enforceable. *Id*. at 19-22.

### *THE DIVISION'S OPPOSITION*

The Division filed opposition arguing that pursuant to the New Jersey Gross Income Tax Act (the "**NJGITA**") it assessed and perfected its TGI lien on the same date the Debtor electronically filed his TGI return on April 15, 2013. ECF No. 56 at 2.[6] The Division does not address the GIT lien in its motion. The Division also alleges that notice and demand are not

---

[6] The Division refers to N.J.S.A. 54A:9-2(a) and N.J.S.A. 54A:9-3(a). ECF No. 56 at 4-6.

required under the NJGITA and therefore, are not applicable to the issue before the Court. *Id*. at 11-12. The Division asserts that the 2012 TGI was automatically perfected under the NJGITA when the Debtor filed his tax return. *Id*. at 4-7. The Division asserts that the Court must adhere to the NJGITA. *Id*. at 7-12. The Division further urges the Court to rely on *In re Johns*, 242 B.R. 265 (D.N.J. 1999). *Id*. The Division asserts the issue before the Court is similar to the one in *In re Johns* because that case also involved a lien dispute regarding personal gross income tax. *Id*. The Division argues the principal amount remaining due of $165,024.35 was assessed and choate on April 19, 2013. *Id*. The Division expressly concedes that the TGI penalty and interest liens were assessed after the IRS. *Id*. at 4. Specifically, the Division states, "[d]ue to the language of N.J.S.A 54A: 9-3(a), and the decision in *In re Johns*, 242 B.R. at 270, the State concedes the priority over the IRS's liens pertains only to the assessed personal income tax due of $165,024.35." *Id*. at 4, fn. 1. The Division does not address the GIT lien's *de minimis* interest amount of $32.01.

### THE IRS'S REPLY

In its reply, the IRS asserts that the Division was first required to provide notice and demand for the lien to be summarily enforceable. ECF No. 66. Further, the IRS argues that its federal lien cannot be circumvented by a more lenient state statutory scheme. *Id*. at 3. The IRS asserts that the court in *In re Johns* committed two legal errors by holding that the state tax return's "filing date" determines the state tax lien's relative priority. *Id*. at 6-7. The first error was the failure to require notice and demand to the taxpayer before considering the state income tax lien choate. *Id*. at 6. The IRS alleges that the second error was adopting the legal artifice of splitting the state tax lien into two parts. *Id*. at 6-7.

***THE HEARING***

The Court conducted a hearing on the Summary Judgment Motion. The IRS focused on many of the arguments set forth in the pleadings. It also argued that under the Supremacy Clause, federal law controls lien priority between a federal tax lien and a state tax lien. ECF No. 71 at 4. It emphasized that for a lien to be choate under federal law, "it has to meet the . . . same standards as the federal standards." *Id*. at 8-11, 23. The IRS continued that under federal law, "before there is any summary enforcement of the state lien . . . you have to have a notice and demand." *Id*. at 11. The IRS argued the statute at issue is N.J.S.A. § 54:49-1, rather than the NJGITA, as it addresses the creation of a lien. *Id*. at 5, 21; N.J.S.A. § 54:49-1.[7] It further argued the Court should be persuaded by the Eighth and Ninth Circuits, which held that assessment on the date of filing is not sufficient to meet the federal standards for choateness. *Id*. at 24. Finally, the IRS explained that for a debt to be summarily enforced, one must have the ability to "enforce a debt without going to court and filing a complaint." *Id*. at 27. The IRS emphasized that the TGI lien could not be enforced on the date the Debtor filed his return because the amount due was unknown, which is demonstrated by the fact that a review of the tax return was required. *Id*. at 25-26.

The Division argued that applicable precedent "sets forth three requirements for choateness, plus the additional summarily enforceable aspect," which the Division satisfied. *Id*.

---

[7] Section 54:49-1 states:

> [t]he taxes, fees, interest and penalties imposed by any such State tax law, or by this subtitle, from the time the same shall be due, shall be a personal debt of the taxpayer to the State, recoverable in any court of competent jurisdiction in an action in debt in the name of the State. Such debt, whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and except as may be provided to the contrary in any other law, and shall have preference in any distribution of the assets of the taxpayer, whether in bankruptcy, insolvency or otherwise. The proceeds of any judgment or order obtained hereunder shall be paid to the commissioner.

*Id*.

at 31.  The Division further asserted that the IRS is improperly attempting to add notice and demand as an additional choateness requirement.  *Id*. at 31, 37.  The Division explained that once a lien is summarily enforceable, "nothing further needs to be done."  *Id*. at 38.  The Division asserted that "choateness only requires that the [Division has] a right to enforce its lien in a summary fashion."  *Id*.  This means that the lien is summarily enforceable even if the Division conducts internal collection procedures to protect its lien.  *Id*. at 61-62.

The Court queried whether granting the state lien a higher priority by permitting assessment on the date the return is filed results in the state of New Jersey always priming federal liens because under the current statute, the IRS could never be first in time, first in right.  *Id*. at 15.  The Court noted that under such a scenario, the Division would always be first in time even when a taxpayer filed state and federal returns on the same day.  *Id*. at 46.  The IRS responded that the lien is not summarily enforceable upon filing because the amount of the lien must still be determined, plus notice and demand, which the IRS asserts is also a requirement.  *Id*. at 16.  The IRS argued that after the return is received, any penalty liability would be indicated in a bill sent out after receipt.  *Id*. at 16-18.  The Division responded that when GIT returns are "filed on time and the taxes or the deficiency arises at that time and there's no changes or anything, yes . . . the State of New Jersey would beat the IRS."  *Id*. at 34.  The Division summarized, "that is the outcome of the statute as it's set forth."  *Id*. at 46.

The Court asked the parties to clarify certain aspects of N.J.S.A. § 54A:9-3(a), including the Division's role in issuing a notice of deficiency within the assessment provision of the NJGITA, and any state regulations and/or legislative history pertaining to the relevant portions of the NJGITA.  *Id*. at 40, 82-85.  However, the parties were unable to answer those questions posed by the Court.  *Id*.  The Court, therefore, required additional briefing from the parties.  *Id*.

***THE DIVISION'S SUPPLEMENTAL STATEMENT***

The Division filed a supplemental statement in response to the Court's inquiries.  ECF No. 68.  The Division indicated that it was unable to obtain any state regulations or legislative history on the NJGITA regarding the assessment provision found in N.J.S.A. § 54A:9-3(a).  *Id*. at 2.  However, the Division provided the Court with additional state law regarding the issuance of a notice of deficiency.  *Id*. at 2-4 (citing *Nevins v. Director, Division of Taxation*, 31 N.J. Tax 26 (Tax 2019)).  The Division indicates that New Jersey state law does not require a notice of deficiency to be issued for self-assessed taxes under N.J.S.A. § 54A:9-2(a) because the plain language states the director "may mail a notice of deficiency to the taxpayer."  *Id*. at 3.  The Division asserts that a notice of deficiency is only required when the Division: (1) determines a taxpayer's deficiency is one to which the taxpayer did not already agree; or (2) assesses additional income tax.  *Id*. (citing, *Nevins*, 31 N.J. Tax at 39).  The Division concluded that the lien was choate when the Debtor filed his New Jersey tax return.  *Id*. at 5.  The Division maintains it met all the requirements for choateness.  *Id*.  The Division concludes that its lien was summarily enforceable prior to the IRS's assessment date of June 3, 2013, thereby, entitling the Division to priority over the IRS.  *Id*.

***THE IRS'S RESPONSE TO THE DIVISION'S SUPPLEMENTAL STATEMENT***

The IRS filed a response to the Division's supplemental statement.  ECF No. 69.  The IRS asserts N.J.S.A. § 54A:9-3(a) and state law may determine whether a lien arises and has priority over private creditors' liens, but the issue before the Court is the priority of federal and state tax liens.  *Id*. at 2.  The IRS argues that under the Supremacy Clause, New Jersey has no authority to determine whether its tax lien has priority over federal tax liens because the issue is determined by federal law.  *Id*. at 3-4.  The IRS maintains that under federal law, the Division's liens could not

have been choate and have priority over the federal tax lien as of June 3, 2013, because the Division failed to: (1) provide notice and demand; (2) make any penalty determinations; and (3) state "non-ministerial" acts still had to be performed.  *Id*. at 3.  In other words, the Division's tax liens were not yet "summarily enforceable."  *Id.*

### *CONSENT ORDER & STIPULATION RESOLVING CERTAIN DISPUTES BETWEEN THE PARTIES*

The Trustee ultimately reached an agreement with the IRS and the Division, which permitted him to make distributions, including the disputed funds.  The Court entered a *Consent Order & Stipulation Resolving Claims of The Internal Revenue Service and The State of New Jersey Division of Taxation* dated November 30, 2020 (the "**2020 Consent Order**").  ECF No. 75.  On November 30, 2020, the docket in the Adversary Proceeding reflected an entry, which stated that the 2020 Consent Order resolved the lien priority dispute.  Accordingly, the Court terminated the Adversary Proceeding.  Apparently, that outcome was erroneous.  The parties jointly filed a *Joint Motion To Reopen And/Or Reinstate Federal Versus State Lien Priority Dispute In Adversary Proceeding* (the "**Motion to Reopen**"), requesting that the erroneous docket entry be stricken, and their lien priority dispute be reopened and/or reinstated to the Adversary Proceeding docket.  ECF No. 77.  The parties advised that the 2020 Consent Order only partially resolved their disputes.  On February 25, 2021, the parties withdrew the Motion to Reopen because the docket was corrected to reflect that the matter remained open.  ECF No. 78.  The Court then held a status conference on August 17, 2021, to discuss the case and the impact of the 2020 Consent Order.  The parties agreed and clarified to the Court that the 2020 Consent Order only resolved a portion of the parties' dispute and that lien priority issue remained.

## DISCUSSION

### I. *SUMMARY JUDGMENT*

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court shall "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.

The United States Supreme Court has defined an "issue of material fact" as a question which must be answered in order to determine the rights of the parties under substantive law, and which can only properly be resolved "by a finder of fact[,] because [it] may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); *see also Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) ("A fact is material when its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003); *Wanland and Assocs. Inc. v. Nortel Networks Ltd. (In re NorVergence, Inc.)*, 384 B.R. 315, 370 (Bankr. D.N.J. 2008).  The burden then shifts to the nonmoving party, who must present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial.  *Celotex Corp.*, 477 U.S. at 323-24; *Knauss*, 289 F. Supp. 2d at 549; *In re NorVergence, Inc.*, 384 B.R. at 370.  The nonmoving party must "make a showing sufficient to establish the existence of every element essential to the party's

case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001); *In re NorVergence, Inc.*, 384 B.R. at 370.

Inferences and facts should be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995); *In re NorVergence, Inc.*, 384 B.R. at 370. However, parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The nonmovant may not rely on mere allegations but must present actual evidence raising a genuine issue of material fact. *Anderson*, 477 U.S. at 249. Likewise, a motion for summary judgment will not be defeated by "the mere existence" of some disputed facts. *American Eagle Outfitters v. Lyle & Scott, Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "If the evidence (offered by the nonmoving party) is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citation omitted). Only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dehart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004).

Summary judgment may be proper even though some material facts remain disputed, if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law. *Cleveland v. Policy Mgmt. Sys. Corp*., 526 U.S. 795, 804 (1999); *In re NorVergence, Inc.*, 384 B.R. at 370. "[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

The Third Circuit held that the purpose of summary judgment is to avoid an unnecessary trial which results in delay and expense, by promptly disposing of any actions in which there is no

genuine issue of material fact. *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974); *Peller v. Syracuse Univ. (In re Peller)*, 184 B.R. 663, 666 (Bankr. D.N.J. 1994). However, summary judgment is defined as a "drastic remedy" which is not to be granted liberally. *Tomalewski*, 494 F.2d at 884. The Third Circuit stated that "where there is the slightest doubt as to the facts," summary judgment may not be granted. *Id.*; *see also Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss*, 289 F. Supp. 2d at 549 (citing *Anderson*, 477 U.S. at 249).

Here, the ultimate resolution of the case depends on whose lien has priority (*i.e.* IRS's or the Division's). The parties agree on the material facts. It is the legal impact of those facts to which they disagree. Accordingly, the matter before the Court is ripe for summary judgment.

## II. THE DIVISION'S LIENS ARE CHOATE AND SUMMARILY ENFORCEABLE UNDER FEDERAL COMMON LAW

The priority of a lien of the United States for unpaid taxes, relative to other liens, always involves a federal question, which is determined by the federal courts. *United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 49-50 (1950). The relative priority of each lien in the instant case depends on which lien was first in time and ultimately, first in right. *United States v. McDermott*, 507 U.S. 447, 449 (1993); *accord United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87 (1963); *United States v. City of New Britain*, 347 U.S. at 85 (1954); *Monica Fuel, Inc.*, 56 F.3d at 511; *Air Power, Inc. v. United States*, 741 F.2d 53, 54 (4th Cir. 1984). Priority between federal tax liens, and specific and perfected state statutory liens is determined by the principle that the first in time is the first in right. *Rankin & Schatzell v. Scott*, 25 U.S. 177, 179 (1827) ("The principle is believed to be universal, that a prior lien gives a prior claim.").

Here, the IRS's lien arose under § 6321 of the Internal Revenue Code, which provides:

> [i]f any person liable to pay any tax neglects or refuses to pay the
> same after demand, the amount (including any interest, additional
> amount, addition to tax, or assessable penalty, together with any
> costs that may accrue in addition thereto) shall be a lien in favor of
> the United States upon all property and rights to property, whether
> real or personal, belonging to such person.

26 U.S.C. § 6321.  Such a lien arises at the time the IRS conducts the tax assessment.  *See id.*; 26 U.S.C. § 6322 ("Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made . . . ."); *Monica Fuel, Inc.*, 56 F.3d at 511  ("Under 26 U.S.C. §§ 6321 and 6322, federal tax liens arise when the underlying taxes are assessed.").

The IRS assessed the federal 2012 tax liability, including applicable penalties and interest on June 3, 2013, by sending the Debtor a *Statutory Notice of Balance Due*.  Thus, the IRS conducted its tax assessment on June 3, 2013.  The parties agree that IRS perfected its lien on June 3, 2013.  Their disagreement relates solely to the timing of the Division's perfection of its liens.

As for the Division's liens, the Supreme Court stated in *McDermott*: "[o]ur cases deem a competing state lien to be in existence for 'first in time' purposes only when it has been 'perfected' . . . ."  *McDermott*, 507 U.S. at 449.  The point at which a state lien is perfected depends "on the time it attached to the property in question and became choate." *City of New Britain*, 347 U.S. at 86; *see Monica Fuel, Inc.*, 56 F.3d at 511.  As required by federal common law, a lien may be choate "when there is nothing more to be done . . . when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."  *City of New Britain*, 347 U.S. at 84.  In addition to the three *City of New Britain* requirements, a state-created tax lien must also be summarily enforceable, or without need for any further judicial proceeding to be choate.  *Monica Fuel, Inc.*, 56 F.3d at 512-13.

### A. The Division Established the Identity of the Lienor before the IRS Perfected the Federal Tax Lien

In the present case, the IRS concedes that the Division established the identity of the lienor, the State of New Jersey, prior to the perfection of the federal tax lien on June 3, 2013.  ECF No. 45.  Therefore, the Court need not analyze this requirement further.

### B. The Division Established the Property Subject to the Liens before the IRS Perfected the Federal Tax Lien

The IRS acknowledges that the Division established the property subject to the state liens, which is all of Vosough's property, before the perfection of the federal tax lien.  *Id*.  Thus, the Court need not analyze this requirement further.

### C. The Division Established the Amounts of the State Liens before the IRS Perfected the Federal Tax Lien

No specific test exists to determine when the amount of a state tax lien is "established." However, federal courts generally agree that even if a state statute allows for tax assessment on the date the taxpayer files the return, the mere filing is not adequate to satisfy the third factor set forth in *City of New Britain*.  *See Monica Fuel, Inc.*, 56 F.3d at 512; *In re Priest*, 712 F.2d 1326, 1329 (9th Cir. 1983); *Minnesota, Dep't of Revenue v. United States*, 184 F.3d 725, 729 (8th Cir. 1999). Therefore, additional action is required to establish the amount of the lien.

In *Monica Fuel*, *Inc.*, the Third Circuit held that the Division's motor fuels tax liens, which arose under New Jersey's State Tax Uniform Procedure Law, had priority over the IRS's competing federal tax lien because, among other things, the amounts were sufficiently established. *Monica Fuel, Inc.*, 56 F.3d at 512.  The Third Circuit held that the Division established the amount of the state tax liens when it notified the filer (Monica Fuel) of the assessments.  *Id*.  The court in *Monica Fuel, Inc.* relied on a different New Jersey statute than the one currently at issue before the Court, which required notice for assessment.  *Id*. at 509.

16

In addition, in *In re Priest*, the Ninth Circuit analyzed the relative priority of the IRS's service liens compared to California unemployment tax liens, which were said to arise when the delinquent tax return was filed under California's state law. *In re Priest*, 712 F.2d at 1327. The Ninth Circuit held that the mere filing of the tax return as permitted in the state statute, without further action, could not create sufficiently choate liens under the *City of New Britain* test. *Id*. at 1329. Specifically, the court held that a lien cannot arise prior to taking administrative steps to establish the lien, and that the mere receipt of the delinquent state tax return was too vague and indefinite a standard to give a state tax lien priority over a federal lien. *Id*.

Similarly, in *Minnesota, Dep't of Revenue*, a dispute existed between the State of Minnesota and the IRS regarding the priority of their respective state and federal tax liens. *Minnesota, Dep't of Revenue*, 184 F.3d at 725. The Eighth Circuit, agreeing with the Ninth Circuit in *Priest*, decided that state tax liens are not necessarily perfected on the date a taxpayer files a return simply because state law says so. *Id*. at 729. The Eighth Circuit opined that to formally establish the amount of the taxpayer's liability, additional determinations, corrections and assessments are required. *Id*. at 729-30. The Eighth Circuit ultimately held that the state failed to establish the amount of its lien because the returns filed by the taxpayer had not been examined as required by state law. *Id*. at 730.

In *In re Johns*, a case involving a lien priority dispute between the IRS and the Division, the district court analyzed the assessment procedures under the NJGITA, the same statute at issue in the present case. *In re Johns*, 242 B.R. at 269. While the court ultimately held that the Division's liens were established before the IRS's, the court made an important distinction that, "[a]lthough a state lien may arise on the date the tax is due and attach to the debtor's property, the due date is not sufficient to create a choate lien. The State lien only becomes established and

enforceable on the assessment date." *Id*. However, the district court then held that the liens' assessment date was the same day as the return filing date pursuant to state law, without conducting any further analysis on how the filing date ultimately coordinated with the assessment date. *Id*. at 269-70. But, the take away from *In re Johns* is that even though the relevant state law statute provided for the assessment date on the same date as the filing date, the court still emphasized that additional action is necessary to create a choate lien. *Id*. This reasoning follows the guidance set by the Eighth and Ninth Circuits.

The Court agrees with the district court in *In re Johns* that the due date of a return is insufficient to create a choate lien. However, the Court respectfully disagrees with the conclusion that follows, which is that the assessment date aligns with the same date as the filing of the return. At that point, the Division has taken no additional steps to perfect its lien. Instead, the Court is persuaded by the Eighth and Ninth Circuits that "self-assessment," by simply filing a return, even if found in the state statute, is insufficient to perfect a lien. The Court agrees that to create a choate lien, more action is required.

In the instant case, the Division asserts its liens are assessed under § 54A:9-3(a) of the New Jersey statute, which provides:

> [t]he amount of tax which a return shows to be due, or the amount of tax which a return would have shown to be due but for a mathematical error, shall be deemed to be assessed on the date of filing of the return (including any amended return showing an increase of tax).

N.J.S.A. § 54A:9-3(a).

Under New Jersey law, a tax return that shows an amount due is deemed assessed on the date it is filed. However, to permit assessment on the filing date is contrary to federal common law. Instead, the Court must still determine the date the Division performed an additional act to

assess the tax to satisfy federal common law requirements.   In the present case, the Division electronically processed the TGI return on April 19, 2013.  Once the return was processed through the computer, it provided an amount due.  At that point, the computer determined that the amount due for the Debtor's TGI return was correct and automatically generated a bill.  However, a human review of the bill was needed ". . . due to the large amount of tax and interest due."  ECF No. 45-10 at 21.  The human review was simply the task of double checking to make sure the computer provided the right number.  The Division processed the GIT return on May 1, 2013.  The Court finds that the once the computer processed the TGI and GIT amounts due, the Division's liens were formally established.  Thereafter, on June 3, 2013, the IRS assessed the 2012 tax liability, including applicable penalties and interest.   At the time IRS assessed the tax liability, the Division's liens were already established.

Thus, in regard to the state tax liens' choateness, because the identity of the lienor, property subject to the lien, and amount of the liens were all established before the federal tax lien, the Division is first in time, which usually leads to first in right.  However, the question remains as to whether the Division's liens were summarily enforceable under federal common law, which is determinative of whether the Division's liens are first in right.

### D.  The Division's Tax Liens Were Summarily Enforceable

When Congress enacted the Federal Tax Lien Act of 1966, it intentionally left the three-part test coined in *City of New Britain* in effect, calling it "[a] basic rule of Federal Law." H.R. Rep. No. 89-1884.  The Third Circuit added a fourth requirement to the *City of New Britain's* three-part test:  that the state's liens be summarily enforceable.  *Monica Fuel, Inc.*, 56 F.3d at 512. The Third Circuit added this fourth requirement because ". . . a number of courts have expressly indicated that such a requirement exists."  *Id.*; *see, e.g.*, *In re Terwilliger's Catering Plus, Inc.*, 911

19

F.2d 1168, 1176 (6th Cir. 1990) (state lien holder must show that he or she had the right to enforce the lien prior to the attachment of the federal lien); *Homestead Land Title Company v. United States*, 1993 WL 360389, at * 3 (D. Kan. August 17, 1993) (lien which is not summarily enforceable is inchoate); *In re Bright Designed Floors, Inc.*, 66-2 U.S. Tax Cas. (CCH) P 9752 (S.D. N.Y. 1966) (test of perfection is whether a lien is "presently enforceable").  Once the amount of the lien is established, it is summarily enforceable because the lien is "'given the force of a judgment' upon assessment." *Monica Fuel, Inc.*, 56 F.3d at 513 (quoting *United States v. Vermont*, 377 U.S. 351, 359 (1964); *Minnesota, Dep't of Revenue*, 184 F.3d at 725; *In re Priest*, 712 F.2d at 1329.

Per *Monica Fuel, Inc.*, a lien is summarily enforceable when the state has a right to enforce its lien in a summary fashion. *Monica Fuel, Inc.*, 56 F.3d at 513.  In addition, a lien is summarily enforceable so long as any remaining ministerial acts do not affect the viability of the lien.  *Id*. The Third Circuit further explained that filing a warrant of execution or a certificate of debt are administrative and ministerial acts that do not require a judicial proceeding to obtain a judgment in the Division's favor.  *Id*.  The court in *Monica Fuel, Inc.* held that the Division's liens were summarily enforceable because N.J.S.A. § 54:49-1 provided the state with the right to enforce its liens upon assessment without a judicial contest.  *Id*.  The court in *In re Johns* followed this rationale when it similarly found that the state's tax liens were summarily enforceable.  *In re Johns*, 242 B.R. at 270.

This Court is bound by the holding of *Monica Fuel, Inc.* wherein the Third Circuit established the considerations the Court must analyze to determine whether a lien is summarily enforceable. Therefore, following *Monica Fuel, Inc.*, the Division's TGI lien was summarily enforceable on April 19, 2013, and the GIT lien was summarily enforceable on May 1, 2013, which

20

are the dates that the Division processed the returns.  At that point, the Division had the right to enforce its liens in a summary fashion.  It is immaterial to the analysis that the Division conducted a human review of the bill for the TGI return on July 9, 2013, and then shortly thereafter confirmed the outstanding amount of $180,714.20.  Those were simply administrative and ministerial acts that do not require a judicial proceeding to obtain a judgment in the Division's favor.  Any other action the Division took to review the debt was an extra precaution, but not required.  Before the IRS conducted its tax assessment on June 3, 2013, the Division had the ability to enforce its TGI and GIT liens under federal common law and under New Jersey law as well.  It is clear to the Court that both of the Division's liens were summarily enforceable before the IRS assessed its lien.

## III.   *FEDERAL COMMON LAW DOES NOT REQUIRE NOTICE AND DEMAND TO PERFECT A LIEN*

The IRS argues that *Monica Fuel, Inc.* also requires the Division to notify the taxpayer and demand payment in order to perfect its lien.  This would create a fifth factor.  The IRS directs this Court to the Supreme Court's decision in *Vermont* to support the addition of the notice and demand requirements.  *Vermont*, 377 U.S. 351 (1964).  This argument is without merit.  In *Monica Fuel, Inc.*, the Third Circuit ruled that New Jersey's notification to the taxpayer of the assessments against it was merely evidence to support that the lien amount was established, not that notification is required.  *Monica Fuel, Inc.*, 56 F.3d at 512.[8]

Furthermore, in *Vermont*, the state statute at issue was "virtually identical" to the provisions of the Internal Revenue Code that require notice and demand for federal tax liens.  *Vermont*, 377 U.S. at 351; 26 U.S.C. §§ 6321 and 6322.  The Supreme Court acknowledged that Vermont

---

[8] The Court notes that the *Monica Fuel, Inc.* opinion differs from the present case in that it analyzed the Motor Fuels Act, which requires that tax assessments be in accordance with the New Jersey State Uniform Tax Procedure Law.  N.J.S.A. 54:48-1 et seq.; N.J.S.A. 54:39-49.  Those procedures differ from the NJGITA, which provides guidance for the assessment procedures of the New Jersey gross income tax.

performed notice and demand in compliance with its own statute. *Vermont*, 377 U.S. at 351. Here, the New Jersey statute does not contain a requirement of notice and demand to assess and enforce its liens. Further, federal law does not require it either. Adding an additional requirement of notice and demand creates a new requirement that goes beyond the *City of New Britain* and *Monica Fuel, Inc.* factors.

Also, it is immaterial that Pioneer filed a COD memorializing the Debtor's TGI obligation. The TGI and GIT returns were assessed prior to IRS's assessment, which was June 3, 2013. Pioneer's attempt to collect the tax by sending the April 28, 2014, notice and demand for payment of the TGI and filing the June 26, 2014, COD did not assess any tax against the Debtor. The tax was already assessed. Pioneer was merely using available tools to collect the tax that was already assessed. The Division made no other collection efforts regarding the outstanding 2013 first quarter GIT other than sending a deficiency bill to the Debtor on May 14, 2013.

The New Jersey Tax Court explained that the "statutory scheme relating to the imposition of state tax liability differentiates between tax liability and collection of taxes." *C.J. Kowasaki, Inc. v. Dir., Div. of Tax.*, 13 N.J. Tax 160, 165 (Tax 1993). The court succinctly stated that:

> [p]laintiffs completely misconstrue the nature and purpose of a [Certificate of Debt]. It is a device for collecting taxes, not an independent determination of tax liability. It has no meaning except as it relates to an already ascertained tax liability. Its purpose is to give the Director a tool for imposing a lien on a delinquent taxpayer's property. It is not the basis for a dispute as to tax liability.

*Id*. at 169.

Pioneer, as a third-party debt collector, was acting on behalf of the Division to collect on a tax that was already assessed. Pioneer's actions were "not the basis for a dispute as to tax liability" or tax priority. *See id*.

22

**IV.**   *THE SUPREMACY CLAUSE*

The United States Constitution, Article VI, Clause 2, provides that "this Constitution, and the Laws of the United States, which shall be made in pursuance thereof . . . shall be the supreme Law of the Land."  U.S. CONST. art. VI, cl. 2.  Article VI, Clause 2 of the Constitution is generally referred to as the Supremacy Clause.  "Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict."  *Perez v. Campbell*, 402 U.S. 637, 644 (1971).  If either the purpose or the effect of a state statute interferes with the effectiveness of a federal statute, the state statute is rendered invalid by the Supremacy Clause.  *Id.* at 652.

The IRS argues that the NJGITA is preempted under the Supremacy Clause.  ECF No. 69 at 2-3.  However, the Court declines to decide whether the NJGITA is preempted by federal common law because there is no need to do so.  The Court analyzed the lien priority dispute under federal common law and finds that the Division's liens were first in time and first in right. Therefore, an analysis of the Supremacy Clause is unnecessary.

**V.**   *THE DIVISION'S PENALTY AND INTEREST ARE NOT ENTITLED TO PRIORITY*

Under *Monica Fuel, Inc.*, a state lien is choate when the state establishes the lienor, the amount, the subject property, and that the lien is summarily enforceable.  *Monica Fuel, Inc.*, 56 F.3d at 512.  There is no language in *Monica Fuel, Inc.* or *City of New Britain* that indicates post-perfection additions of penalties and interest somehow undo the choateness of the underlying lien.

In addition, the court in *In re Johns* stated that "[a] state-created lien must be choate or perfected in order to take precedence over a later assessed federal tax lien."  *In re Johns*, 242 B.R. at 268 (citing *City of New Britain*, 347 U.S. at 84-86).  Unlike this Court, the *In re Johns* court found that the state tax liens were assessed on the date the returns were filed and choate prior to

the later assessed federal tax liens. *In re Johns*, 242 B.R. at 271. For the interest and penalties due for non-payment in *In re Johns*, the Division conceded that it never formally assessed these amounts. *Id*. at 270. However, it argued that since penalties and interest can be calculated based on the tax due as shown on the returns, these amounts should also be considered assessed on the date of the return filing. *Id*. However, the court disagreed and found that portion of the liens related to the penalties and interest inchoate, and not entitled to priority over the federal liens. *Id*. The court reasoned that the taxpayer did not include penalty and interest on his returns, so they were never assessed by the Division. *Id*. The *In re Johns* court then bifurcated the Division's liens as to penalties and interest, finding the Division's principal liens choate and the penalty and interest portions inchoate. *Id*.

Here, the Division concedes that the penalty and interest portions of its liens are not entitled to priority over the IRS's liens. It instead seeks this Court to follow the *In re Johns* court's method of bifurcating the penalties and interests from the principal amount due. The Division first determined, and recorded in its books and records, the Debtor's failure to pay its penalty liability for the TGI lien in the amount of $8,745.15 on March 20, 2014, long after the IRS perfected its lien. The IRS argues that because the Division did not determine the Debtor's TGI tax penalty liability until March 20, 2014, the total amount of the lien, $195,278.01, could not be choate until that date. ECF No. 45-1 at 15-16. The Division acknowledges that the TGI penalty and interest liens were assessed after the IRS. However, it still argues that its principal lien of $165,024.35 was assessed before the IRS's lien. ECF No. 56 at 4.

The Court is persuaded by *In re Johns*' approach of bifurcating the Division's liens, because that approach satisfies federal common law. While the Division concedes that the TGI penalty and interest amounts were assessed after the IRS's lien, the Court finds no credence to the

24

IRS's argument that the later penalty and interest assessment should undue the choateness of the Division's principal TGI lien.  Therefore, the Court will adopt the bifurcation method utilized in *In re Johns* as consistent with this tradition.  Accordingly, the Court bifurcates the Division's TGI lien into a principal lien of $165,024.35 that is senior to the IRS lien, and a penalty and interest lien of $30,253.66 that is junior.  The Court also bifurcates the Division's GIT lien into a principal lien of $374.63 that is senior to the IRS lien, and an interest lien of $32.01 that is junior.

## **CONCLUSION**

For the reasons discussed, the Court holds that in this competition, the Division's tax liens prevail in part.  While at first the race for first in time, first in right appeared unfair because the New Jersey legislature designed a "no lose" statute, this Court equalized the race and analyzed the outcome under federal common law.

Consequently, the Court bifurcates the Division's TGI lien into a lien of $165,024.35, representing the principal due, that is senior to the IRS lien, and a lien of $30,253.66, representing the penalty and interest portion, that is junior.  The Court bifurcates the Division's GIT lien into a lien of $374.63, representing the principal due, that is senior to the IRS lien, and a lien of $32.01, representing the interest portion, that is junior.  The IRS's Motion for Summary Judgment is, DENIED in part and GRANTED in part.

An appropriate Order will follow.

DATED: September 23, 2021

*Stacey L. Meisel*
Honorable Stacey L. Meisel
United States Bankruptcy Judge